NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5578-15T3

STRAUS ASSOCIATES II and 11 HISTORY
LANE OPERATING COMPANY, LLC d/b/a
CAREONE AT JACKSON,

 Plaintiffs-Respondents,

v.

MURRAY BERMAN,

 Defendant-Appellant,

and

JACKSON HEALTH CARE ASSOCIATES,

 Defendant.
________________________________

 Submitted October 3, 2017 - Decided October 24, 2017

 Before Judges Reisner and Mayer.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Bergen County, Docket No.
 C-000102-15.

 McCusker, Anselmi, Rosen & Carvelli, PC,
 attorneys for appellant (William P. Munday and
 Louis C. Formisano, on the briefs).
 Cole Shotz, PC, attorneys for respondents
 (Michael D. Sirota, Joseph Barbiere, and
 Michael R. Yellin, of counsel and on the
 brief).

PER CURIAM

 Plaintiffs Straus Associates II (Straus) and 11 History Lane

Operating Company, LLC d/b/a CareOne at Jackson (CareOne) filed

suit against defendants Murray Berman (Berman) and Jackson Health

Care Associates (JHCA) for specific performance of a partnership

agreement between Straus and Berman. Defendant Berman now appeals

from orders of the Chancery Division granting plaintiffs' motion

to enforce the settlement, denying defendant's cross-motion to

enforce the settlement, and denying defendant's motion for

reconsideration. We affirm.

 The facts giving rise to this action are undisputed. Straus

and Berman each own a fifty percent partnership interest in JHCA.

JHCA owns and manages property in Jackson, New Jersey (the

Property). CareOne was a long-term tenant on the Property. Prior

to the expiration of CareOne's lease, Straus and Berman disagreed

on the lease renewal terms. Plaintiffs filed suit against Berman

and JHCA for specific performance seeking to compel renewal of the

lease or, in the alternative, to compel Berman to purchase Straus's

interest in JHCA.

 2 A-5578-15T3
 The parties requested mediation in an effort to resolve their

dispute. The trial judge agreed and referred the matter to a

retired federal district court judge to serve as mediator. With

the assistance of the mediator, the parties reached a settlement

and drafted a mediation settlement agreement (Agreement). The

Agreement stated:

 [I]t is agreed among the parties that
 Plaintiff, or its assigns, will pay Defendant
 Murray Berman ("Berman"), $7,500,000.00 in
 exchange for Berman's assignment to 11 History
 Lane Operating Company, LLC, or its assigns,
 of any and all interests in Jackson HealthCare
 Associates. Closing to occur within six months
 or sooner, but not before January 2, 2016,
 upon not less than 30 days' notice. Rents
 pursuant to the Lease, shall continue to be
 timely paid and distributed until Closing.
 Formal general releases and final settlement
 agreement to be exchanged in due course.

The Agreement was signed by the mediator and counsel for the

parties.

 Three weeks after signing the Agreement, Berman's attorney

sent a draft final settlement agreement to Plaintiffs' attorney.

Section 8.15 of the draft final settlement agreement read as

follows:

 Like-Kind Exchange. Berman may elect to
 structure the sale of the Partnership Interest
 within the meaning of Section 1031 of the
 Internal Revenue Code by assigning its rights,
 but not its obligations, hereunder to a
 qualified intermediary as provided in Income
 Tax Regulations Section 1.103(k)-1(g)(4) on or

 3 A-5578-15T3
 before the Closing Date, and Straus hereby
 agrees to cooperate therewith, provided that
 (a) they will not be required to incur any
 costs as a result of such like-kind exchange,
 (b) the Closing Date shall not be adjourned
 by reason thereof and such like kind exchange
 shall not delay consummation of this
 transaction, (c) Straus will incur no expense,
 liability obligation, in connection with said
 structuring, other than acknowledging and
 consenting to exchanging party's assignment in
 connection with such exchange, (d) Straus
 shall have no obligation to take title to any
 real property in connection with such
 exchange, and (e) Straus shall make no
 representation or warranty in connection with,
 and shall have no responsibility for,
 compliance by such exchange with the Internal
 Revenue Code or any regulations thereunder.

This term was acceptable to Straus, and the parties subsequently

exchanged revised drafts of the final settlement agreement. The

language of section 8.15 remained unchanged throughout the

revision process.

 Two months later, plaintiffs' attorney sent a copy of a final

settlement agreement which set the closing date for January 29,

2016. The next day, Berman's attorney replied: "[T]he change from

30 days' notice to January 29, 2016 closing is not acceptable.

Client is setting up a 1031 exchange." The parties then agreed

to a closing date of February 25, 2016, and plaintiffs' counsel

circulated a final settlement agreement for execution. Only one

ancillary document, an assignment of partnership interest

 4 A-5578-15T3
conveying Berman's interest in JHCA to Straus, entitled Exhibit

"A," was annexed to the final settlement agreement.

 Three weeks prior to the February 2016 closing date, Berman's

attorney revised the final settlement agreement. The revision

changed section 8.15 as follows: "(d) Plaintiffs shall have no

obligation to take title to any real property in connection with

such exchange, other than the Property . . . ." This change would

have allowed Berman to use a "drop and swap" mechanism to

effectuate a 1031 exchange, whereby JHCA would deed a one-half

tenancy-in-common interest in the Property to Berman, who would

then convey the Property interest to a new entity owned by Straus,

in exchange for the $7,500,000 purchase price. Plaintiffs objected

to the change. Berman refused to move forward without the "drop

and swap" provision. Plaintiffs served Berman a notice of default

based upon Berman's refusal to proceed with the closing.

 One month after the closing date, plaintiffs filed a motion

to enforce and compel performance of the Agreement. Plaintiffs

argued that the Agreement established a contract for the sale of

Berman's partnership interest in JHCA to Straus, and that Berman's

addition of the drop and swap language was an improper attempt to

materially change the parties' Agreement.

 Berman cross-moved to enforce and compel performance of the

Agreement or, in the alternative, to restore the matter to the

 5 A-5578-15T3
trial calendar. Berman asserted the parties agreed during the

mediation to conduct the sale as a 1031 exchange, but decided it

need not be included in the signed agreement as it would be fleshed

out in the formal written agreement to follow. Berman argued that

the 1031 exchange was a material term of the Agreement because it

allowed Berman to defer approximately $2,500,000 in taxes. Berman

claimed that plaintiffs agreed to a 1031 exchange, and a drop and

swap was the only way to effectuate such an exchange.

 During oral argument on the enforcement motions, plaintiffs

argued that the Agreement set forth the essential terms requiring

Straus to buy out Berman's interest in JHCA. Plaintiffs denied

that a 1031 exchange was part of the mediation discussions.

Plaintiffs maintained that Berman's draft final settlement

agreement never included documents necessary to effectuate a drop

and swap as the method for transferring the Property. According

to plaintiffs, the drop and swap was a new and unacceptable term.

 Berman argued that the thirty days' notice provision in the

Agreement was included to allow for the completion of a 1031

exchange, and evidenced the parties' intent that the transaction

occur as a 1031 exchange. Berman argued that the 1031 exchange

was an essential term of the settlement. Berman asked the court

to compel plaintiffs to consent to the drop and swap, or declare

 6 A-5578-15T3
the Agreement null due to a failure of mutual assent on a material

term.

 Examining the undisputed evidence, the judge determined that

the Agreement drafted by the mediator and signed by the parties

contained the material terms of the settlement: (1) sale of

Berman's interest in JHCA to CareOne or its assigns; (2) sale

price of $7,500,000; (3) closing in under six months, but not

before January 2016; (4) 30 days' notice; and (5) continued

distribution of rent until closing. The judge found no evidence

of a 1031 exchange as a requirement or essential term of the

Agreement.

 Accordingly, the judge granted plaintiffs' motion to enforce

the Agreement, struck the addition to Section 8.15, and ordered

closing within thirty days. The judge denied Berman's cross-

motion. The judge also denied plaintiffs' fee application, finding

that such a provision was not contained in the Agreement.

 Berman moved for reconsideration seeking to compel

performance of the draft final settlement agreement, including a

1031 drop and swap exchange, or restore the matter to the trial

calendar. Plaintiffs opposed Berman's reconsideration motion.

While his reconsideration motion was pending, Berman declined to

close by the deadline established in the court's May 13, 2016

order. The judge denied the reconsideration motion.

 7 A-5578-15T3
 On appeal, Berman argues that the judge erred by: (1) failing

to view the competent evidence in the light most favorable to him;

(2) failing to find that structuring the sale as a "like-kind"

exchange under 26 U.S.C.A. § 1031 was an essential term of the

settlement; (3) enforcing a contract wherein the parties failed

to agree on an essential term; and (4) declining to hold a plenary

hearing to resolve disputed issues of fact.

 "A settlement agreement between parties to a lawsuit is a

contract." Nolan v. Lee Ho, 120 N.J. 465, 472 (1990).

"Interpretation and construction of a contract is a matter of law

for the court subject to de novo review." Fastenberg v. Prudential

Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998).

"Accordingly, we pay no special deference to the trial court's

interpretation and look at the contract with fresh eyes." Kieffer

v. Best Buy, 205 N.J. 213, 223 (2011).

 A motion for reconsideration is reviewed for abuse of

discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div.

1996). Reconsideration is appropriate only in those cases "in

which either 1) the [c]ourt has expressed its decision based upon

a palpably incorrect or irrational basis, or 2) it is obvious that

the [c]ourt either did not consider, or failed to appreciate the

significance of probative, competent evidence." D'Atria v.

D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990).

 8 A-5578-15T3
 In support of his argument that the judge failed to view the

competent evidence in the light most favorable to him, Berman

relies on Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 474-75 (App.

Div. 1997), and contends that the judge should have conducted an

evidentiary hearing related to the parties' agreement of the 1031

exchange. According to Berman, the evidence that should have been

considered in the light most favorable to him included: (1) the

30 days' notice provision in the Agreement; (2) the inclusion of

section 8.15 in the draft final settlement agreement to which

plaintiffs did not object; and (3) the certification of Berman's

attorney stating the parties agreed to a 1031 exchange during the

mediation.

 The Amatazzo case turned on whether a settlement existed. In

that case, the parties negotiated and exchanged drafts of a

settlement agreement, but the defendant never executed an

agreement. Id. at 471—73. When the plaintiff in Amatazzo moved

to enforce the agreement, the defendant claimed his attorney lacked

authority to settle. Id. at 473. Based on those facts, we found

that the trial judge erred in enforcing the settlement and remanded

for an evidentiary hearing. Id. at 476.

 Berman's reliance on Amatazzo is misplaced, as the parties

here agreed upon a settlement that was reduced to writing and

signed. Moreover, because both parties filed motions to enforce

 9 A-5578-15T3
the Agreement, neither party disputed the existence of a written

settlement.

 The question in this case is whether a 1031 exchange was

contemplated as part of the settlement, not whether there was a

settlement. Accordingly, an evidentiary hearing was not required.

Moreover, because mediation communications are privileged, and

plaintiffs have not expressly waived such privilege, Berman's

argument that information could be provided through an evidentiary

hearing is unavailing. See N.J.S.A. 2A:23C-4; N.J.R.E. 519(a).

See also Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C.,

215 N.J. 242, 263 (2013).

 Further, the parties' exchange of post-mediation documents

does not support Berman's contention that the parties agreed to

the drop and swap provision at mediation. Berman's attorney did

not include the supposedly agreed-on term – "other than the

Property" - in the final settlement agreement when he drafted it

and sent it to plaintiffs' counsel three weeks after the Agreement

was signed. Instead, he added it many drafts later, shortly before

the February 2016 closing date.

 Berman also argues that the judge erred in failing to find

the 1031 exchange was an essential term of the Agreement. Berman

cites Lahue v. Pio Costa for the proposition that "[w]here the

parties agree upon the essential terms of a settlement, so that

 10 A-5578-15T3
the mechanics can be 'fleshed out' in a writing to be thereafter

executed, the settlement will be enforced notwithstanding the fact

the writing does not materialize because a party later reneges."

263 N.J. Super. 575, 596 (App. Div.), certif. denied, 134 N.J. 477

(1993). Berman claims that the parties agreed to a 1031 exchange

during the mediation, but declined to write the provision into the

Agreement. Berman contends that the 1031 exchange was an agreed-

upon essential term, and the use of a drop and swap to accomplish

the exchange was merely "mechanics" to be implemented in the final

agreement.

 Berman misconstrues the legal meaning of "essential" terms

to a contract. A contract's terms are essential when they are

necessary to produce a complete transaction. See, e.g. Berg Agency

v. Sleepworld-Willingboro, Inc., 136 N.J. Super. 369, 375 (App.

Div. 1975). In Berg, the judge held that a signed letter of intent

was a binding contract, notwithstanding the parties' intent to

produce a subsequent formal lease agreement, where the letter

contained the basic terms essential to creating a lease. Id. at

375—76.

 The Agreement in this case, like the agreement in Berg,

contains all of the essential terms for a settlement. Berman

agreed to relinquish his interest in the joint partnership, which

both parties agree was the essence of the settlement. The

 11 A-5578-15T3
Agreement contained terms identifying the interest to be

transferred, the parties to the transfer, the price, the timeline,

and the financial obligations of the parties pending closing.

Thus, there are no missing terms essential to complete the

transfer. Berman's argument misperceives terms essential to form

a contract with terms that he subjectively deemed essential in

order to settle. Berman signed the Agreement which contained

clear terms, manifesting his intent to be bound by that Agreement.

See Comerata v. Chaumont, Inc., 52 N.J. Super. 299, 305 (App. Div.

1958) ("[T]he fact that parties who are in agreement upon all

necessary terms may contemplate that a formal agreement yet to be

prepared will contain such additional terms as are later agreed

upon will not affect the subsistence of the contract as to those

terms already unqualifiedly agreed to and intended to be

binding.").

 Berman's brief does not address denial of his motion for

reconsideration. There is no argument explaining how the judge

abused his discretion in denying Berman's reconsideration motion.

Nor do we find any such abuse from the record. Berman failed to

raise any new facts or controlling decisions not previously

considered by the judge. See R. 4:49-2. Berman's dissatisfaction

with the judge's ruling is not a basis for reconsideration.

D'Atria v. D'Atria, supra, 242 N.J. Super. at 401.

 12 A-5578-15T3
 Plaintiffs request costs and attorney's fees in accordance

with Section 7.2 of the final settlement agreement. However,

plaintiffs did not file an appeal or a cross-appeal. Therefore,

the issue is not properly before us and we decline to consider it.

 Affirmed.

 13 A-5578-15T3